Please call the first case. P.F.D. Supply v. Workers' Compensation Comm'n 4-12-0283. Counsel, you may proceed. May I appease the court, Counselor? My name is Ethan Willenberg, and I represent the appellant, Perry Farms Dairy Supply, in this matter. This case was tried under Section 19B of the Illinois Workers' Compensation Act for medical treatment on Mr. McCoy's lumbar spine. Perry Farms Dairy Supply asserts that Mr. McCoy did not prove a causal relationship between pulling off a truck on April 7, 2010, and the need for low-back treatment. The standard review for this appeal is the manifest weight of the evidence standard. Please note that Perry Farms Dairy Supply has accepted liability for Mr. McCoy's injuries to his right upper extremity and cervical spine as a result of the work accident. Now, on April 7, 2010, Mr. McCoy clearly suffered a work-related injury. When he fell off a truck approximately four or five feet high in Jerseyville, Illinois, he was treated in an emergency room and was diagnosed with a right elbow fracture. Medical records do not mention anything about low-back complaints at that time. Thereafter, the accident, he started treating with Dr. Michael Nagelsky, an orthopedist, for his upper extremities. Dr. Nagelsky never mentioned anything about low-back pain in his medical records. So when did Mr. McCoy begin experiencing low-back pain following the April 7, 2010 accident is a mystery. As you may know from our brief, the record contains several different versions of when Mr. McCoy's low-back pain allegedly began after following the- So how many weeks was it after the April accident? Was it several weeks? Well, that's the mystery. If you look at the medical records and his testimony, they're all in conflict, if you ask me. Didn't Dr. Burnett have a plausible explanation for that? He had an explanation that he characterized as the secondary effects of the work accident, stating that the narcotic analgesics he was taking for his right elbow pain were masking his pain up until the beginning of May of 2010, approximately four weeks later after the accident. Is that not consistent with the- It wasn't consistent with Mr. McCoy's testimony. He said he had problems two weeks after the accident. So obviously, the narcotic analgesics would have not been masking his pain during that time. So there's a couple weeks difference there. Dr. Burnett gave a causation opinion, didn't he? He did. That is correct. Why couldn't the commission believe? Well, that's what I'm getting into. I'm getting into some of these complaints where there's multiple medical histories on when this low-back pain began. And Dr. Burnett stated, I think his opinion, he said that his low-back symptoms began four weeks after the accident, or around May 4th of 2010, based on that secondary effects opinion that we just discussed. But the petitioner's own testimony refutes that opinion, if you look at the record. Well, obviously, it's within the province of the commission to judge the credibility and believability of the witnesses, correct? That is correct. They apparently found the claim incredible. Right, and then there's other issues with that, and that's why we're here today, because I know the bar for a manifest way to the evidence standard is high. But if you look at the medical records, the first notation of any mention of low-back pain by any medical provider is from a physical therapist. And this is on May 19th of 2010, which is 42 days after the date of accident. And then he went and saw his chiropractor, this Dr. James Georgia, on June 2nd of 2010. This chiropractor recorded a history that Mr. McCoy experienced immediate low-back symptoms after the accident. And then, again, he went back to the physical therapist at the work center on June 7th, 2010, and there was a history recorded that he experienced low-back and left leg pain one week after the April 7th accident. We do not dispute. He was injured in the accident. We do not dispute that at all. So the whole dispute is about when the pain manifested itself, or what's the point you're trying to make? Well, we're saying that the low-back complaints are not part of the accident. And you're saying there's an intervening cause? Possibly. If you look at the record, there was another injury on July 11th, 2010. He went back to work for Prairie Farms Dairy in July of 2010 for four days, ended up going to the emergency room on July 11th, 2010. The triage nurse recorded a history that Mr. McCoy had had back pain for the past couple hours, and the record stated that he was injured in a lifting accident in Mexico, Missouri. This was actually signed by Mr. McCoy as well. Is this the weightlifting thing? No, but I was going to get to that. You're going to get to that. But you're saying during the course of his employment. That is. So this was another injury that we feel, you know, that would be under Missouri law. Why was it inconsistent with his original injury? Pardon me? Why is it inconsistent with his original injury? Why is that second injury inconsistent? Yeah. He's got a weakened back. He lifts something and it hurts. Okay, so that's another injury then. Why is it making a superseding intervening cause? Because it was from another lifting accident. So what? He had been back to work. He hadn't had really any treatment on his low back. You know, boil this down. You've got one doctor that says there's a causal relationship. You've got another doctor that says there isn't. The rest of this stuff is nothing more than weighing the evidence, and that's what the commission did, and they chose to believe the claimant's doctor as opposed to your IME. That is exactly true, and that's why we feel that the conclusion that the commission came to was wrong. Well, I understand why you feel that way, but the question is why is it against the manifest way of the evidence? Well, another thing is the credibility of Mr. McCoy when he testified at trial. He returned to work in July of 2010 and stated that he had told his supervisor at the end of these days when he was working that his low back was hurting after a long day at work. The general manager for Prairie Farms Dairy Supply in Missouri, he testified his supervisor was actually on vacation that week. So I think that's a big credibility issue. The whole problem with that, and, you know, your argument has some intuitive appeal, but as you know, the well-settled rule is very clearly we cannot substitute our judgment for that of the commission on credibility, can we? I think you can if the opposite conclusion is clearly apparent. Well, basically you're saying that the evidence was weighed incorrectly. Yeah, exactly. And then turning to that physical therapy note from May 10th of 2010, Mr. McCoy gave a history that he was actually pumping iron the day before and felt okay. Did the commission find that to be unjust? I think they just glossed over it. But it turns out, you know, he admitted he did not lift any weights whatsoever except what he did in physical therapy, and then he also admitted that he didn't attend physical therapy on the day before, which was May 9th, 2010, which is a Sunday. So that, again, calls in whether the medical provider recorded a correct history or if he was lifting weights the day before. You've identified several areas that you think are pertinent to this issue, whether or not it's against the manifest weight. In your judgment, what is your strongest argument? I think our strongest argument is there's all these different medical providers that have different time frames of when this low back pain began. So if you believe Mr. McCoy's testimony, that is he started experiencing low back symptoms two weeks after this accident, then you have to find at least four medical providers were incompetent in recording medical histories. But even if the claimant's testimony is internally inconsistent, that's still a credibility finding that the commission makes. The commission can find one of those scenarios to be factually accurate and can peg its decision to that without it being against the manifest weight, can't it?  The testimony that he began experiencing back pain two weeks after the accident, that doesn't coincide with the medical evidence, if you take a look at the medical records. So that's why I believe we're here today. And, you know, any of these cases where there's any delay in treatment for low back pain, that's always a red flag on the defense side, and so we've got to figure out exactly, you know, when this back pain began. And then, in summary, we just feel an opposite conclusion is clearly apparent in this case. We ask this honorable court to reverse the decision of the circuit court and remand the case back to the Illinois Workers' Compensation Commission, since the nature and extent of Mr. McCoy's other alleged injuries has not been litigated. If you don't have any further questions, I'd like to save some time for rebuttal. You will. You have five minutes. Thank you. Thank you, counsel. Counsel in response. May it please the court, counsel. My name is Carrie O'Sullivan. I represent Harold McCoy. Your Honors, this was a severe injury. This was a fall from four to five feet, an injury that was significant enough to fracture his elbow and herniate a disc in his neck. I disagree with counsel when they state that when the low back pain started is a mystery. It's really not a mystery at all. The arbitrator in the commission found that Mr. McCoy was credible when he testified that his low back pain began a couple weeks after the injury. But isn't opposing counsel's problem that subsequent medical histories just don't document any of that? The subsequent medical histories do document that. The date of the injury was April 7th. April 28th, 2010 at the work center, there's a box checked that they were giving him back school in the physical therapy. That's 21 days after the accident. The actual first documented note after that, April 28th, is May 6th, which is 29 days after the accident on an intake form with Dr. Nagulski, signed by Mr. McCoy. He indicated he had neck and back pain. Thereafter, May 19th, it's indicated that he had back pain at his physical therapy appointment that was increasing in severity. I think all those things are consistent with Dr. Gornett's opinion that he sustained a latent injury that became more symptomatic as his activity increased. The arbitrator in the commission found that Mr. McCoy was credible when he testified that between the date of the injury, April 7th, and the time that he started complaining of low back pain to his medical providers, that he had his arm in a sling. He was off work. He was not lifting anything. He was not doing any strenuous activity. I mean, he broke an elbow. What do you make of this argument that he alluded to lifting weights during this period? I believe it was in jest. I mean, that's a statement made to a physical therapist. It could have been that he had been lifting weights in physical therapy, perhaps not the day before. It could have been, oh, I was pumping iron the other day when he was working out at physical therapy. He testified credibly. The arbitrator in the commission found him credible that he doesn't lift weights. He's not a weight lifter. I haven't seen the actual note. There is an actual smiley face in the medical record? I believe there is, yes. That's the therapist's note? That's the therapist's note at the work center. So I believe that that's a comment made in jest. I think that... Is that a recognized medical notation? I'm not sure. It's a separate billing code, I think. I think Dr. Gornet's opinion was very credible. I think it was well within the province of the commission to find, you know, to give greater weight to the treating physician's opinion with regard to causation. I don't think Dr. Petkovich's opinion was credible. The respondent, Section 12 examiner, he even agrees with Dr. Gornet as to the diagnosis. He even agrees with Dr. Gornet as to the treatment plan. They just disagree on the issue of causation. And Dr. Petkovich's opinion that this low back condition is a preexisting degenerative condition that he just so happened to become more vocal about 21 days after the work injury. And I don't find that opinion to be credible. You know... And he bases that opinion on a 2008 record in which Mr. McCoy complained of flank pain. You know, Mr. McCoy said, yeah, in 2008 they thought it had gallstones. It was like abdominal pain. They were concerned about something like that. So to say that this is a preexisting condition that he just so happened to become more vocal about, you know, 21 days after the work injury, after a five-foot fall that fractured his elbow and herniated the disc in his neck, when there's a complete absence of any medical history of MRIs of the low back, injections to the low back, physical therapy to the low back, primary care physician treatment to the low back. I think Dr. Gornet's opinion that this was a latent injury that became more symptomatic as his activity increased is much more credible. That said, I mean, we think the manifest weight of the evidence is that Dr. Gornet's opinion was more credible. And it was within the province of the commission to weigh the credibility of Mr. McCoy, the witnesses, and the doctor's opinions. And we would ask that the commission's opinion with regard to all issues be affirmed. Thank you, counsel. Counsel, you may reply. Okay, I want to first refer to the patient information sheet from May 6, 2010. Dr. Nagelsky had recommended Mr. McCoy be evaluated for cervical issues, so we went to see Dr. Keith Wilkie, who's an orthopedist. And this was on a patient information sheet. It says, list your problems. It goes neck, dash, dash, back. So is that a low back complaint? The neck is part of the back. You can't figure that's a low back complaint at that time. I know it's kind of a side issue because Dr. Wilkie goes on to say it's May 25, 2010. Note that Mr. McCoy's back pain had been present since around May 4, 2010. Were those notes the nurse's notes taking the history, or were those the doctor's? And if the latter, did he interpret his notes as to what neck, dash, dash, back meant? He did not. If you look at Dr. Wilkie's record from that day, there's no mention of low back pain at that time in his record. He is an orthopedist that treats spine. I would have thought he would have mentioned something. This guy also complains about low back pain, but I am evaluating him just for his neck issues. But it's not in the record that way. Then going on to Dr. Pekovich's opinion, I don't believe he based his opinion on a 2008 record where Mr. McCoy was treated for flank pain. I think this was a red herring on their part. Dr. Pekovich's opinion was based on his evaluation, his review of the medical records, and the MRI studies that were taken. MRI studies showed nothing acute. This guy had degenerative disc disease at L4-5 and L5-S1. This guy had a history of being a drywall taper. And even if you read Dr. Cornett's records on 335 of the record, he even tells Dr. Cornett he had chiropractic adjustments in the part for his neck and low back issues in the past. Obviously, I think Dr. Pekovich was assuming he definitely had some issues with his low back in the past. No further questions? I don't believe there are, counsel. Thank you. Thank you, counsel, both, for your arguments in this matter. It will be taken under advisement that this position shall issue in due course.